**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE DOE (A.N.K), <br><br> Plaintiff, <br><br> v. <br><br> ESA P PORTFOLIO LLC, *et al.*, <br><br> Defendants. | Civil Action No. 25-2331 (MAS) (RLS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants ESA P Portfolio LLC, ESA P Portfolio Operating Lessee LLC, and ESA Management LLC's (collectively, "Defendants") Motion to Dismiss (ECF No. 34) Plaintiff Jane Doe's (A.N.K.) ("Plaintiff") Second Amended Complaint (the "SAC") (ECF No. 32). Plaintiff opposed (ECF No. 39), and Defendants replied (ECF No. 40). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendants' Motion to Dismiss is denied.

**I.     BACKGROUND**[1]

Plaintiff, a Rhode Island resident, alleges that between March 23, 2015, and April 6, 2015, she was sex trafficked "numerous times" at the Extended Stay America located at 30 Worlds Fair Drive, Somerset, New Jersey 08873 (the "Subject ESA Hotel"). (Second Am. Compl. ("SAC") ¶¶ 11-12, 21-23, ECF No. 32.) Plaintiff states that she was fourteen years old when her trafficker

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

initially reached out to her via Facebook and that the sex trafficking occurred while she was a minor "in rooms of the Subject ESA Hotel and was facilitated by the . . . Defendants." (*Id.* ¶¶ 21-22, 25.)

According to the Complaint, Defendants facilitated Plaintiff's exploitation, as Defendants owned, operated, and managed the subject ESA Hotel,[2] employed the staff at the Subject ESA Hotel at all relevant times, and ignored "obvious signs" that Plaintiff was being trafficked and that "the ESA Defendants knew or, through the exercise of reasonable diligence should have known, that they were participating and benefitting in a venture causing [Plaintiff] sexual exploitation." (*Id.* ¶¶ 25, 27-29.) The alleged "numerous obvious signs of trafficking" that Plaintiff exhibited include: (1) "[t]he hotel room in which [Plaintiff] was trafficked was paid [for] by [Plaintiff's] trafficker with a credit card in his name, even though he already had publicly[-]available sex trafficking charges against him from 2011"; (2) her trafficker "went to the front desk every morning to extend their stay[ and] pay for another day at the hotel[,] as opposed to paying for the entire stay upon initial check in"; (3) the fact that Plaintiff checked into the Subject ESA Hotel with her trafficker, who was significantly older than her and "clearly not related," and was always accompanied by her trafficker when not in her hotel room; (4) Plaintiff and her trafficker "got into loud arguments that involved screaming and crying that could be heard outside of the room"; (5) even though Plaintiff and her trafficker "stayed for multiple days, housekeeping was kept away by using the 'Do Not Disturb' door hanger"; (6) despite refusing housekeeping, Plaintiff's trafficker went to the front desk consistently to exchange used towels for fresh towels; (7) "[t]here

---

[2] Defendant ESA P Portfolio LLC is the owner of the Subject ESA Hotel. (SAC ¶ 15.) Defendant ESA P Portfolio Operating Lessee LLC leased the Subject ESA Hotel from Defendant ESA P Portfolio LLC. (*Id.* ¶ 16.) Defendant ESA Management LLC managed and operated the Subject ESA Hotel. (*Id.* ¶ 17.)

2

was heavy foot traffic in and out of [Plaintiff's] room involving men who were not hotel guests"; and (8) Plaintiff's trafficker would linger around the hotel and/or parking lot while Plaintiff was with a "john." (*Id.* ¶ 60.) She also alleges having "multiple johns every day" who "entered and left at unusual hours and were present at the hotel for brief periods of time" while her trafficker and a friend of her trafficker lingered around the hotel and in the parking lot. (*Id.* ¶¶ 60-61.) Plaintiff claims upon information and belief that "multiple employees at the Subject ESA Hotel, including management-level employees, observed and/or were made aware of these signs of trafficking while acting within the scope and course of their employment." (*Id.* ¶ 62.)

Plaintiff cites several news stories of arrests made from 2011 to 2018 for various sex trafficking crimes in Extended Stay of America properties throughout the country. (S*ee id.* ¶¶ 46-50.) She also alleges Defendants should have known of Plaintiff's sex trafficking because "the Subject ESA Hotel was in a high-crime area with a known history of sex trafficking" and online reviews of the Subject ESA Hotel "establish the nature of the Subject ESA Hotel's role as a venue for criminal activity, including sex trafficking[.]" (*Id.* ¶¶ 55-56 (providing guests' reviews, including that "'[y]ou can hear people screaming and yelling at each other,'" "'the feeling the guys sitting outside in their cars all the time are pimps[,]'" and "'there was criminal activity right across the hall and the police were called'").)

Because of the "widely[-]known and pervasive relationship between sex trafficking and the hotel industry[,]" and signs of sex trafficking that Defendants were made aware of, Plaintiff alleges that "Defendants knew or should have known [of] the trafficking of [Plaintiff] at the Subject ESA Hotel." (*Id.* ¶¶ 30, 34, 36, 40.) Plaintiff further alleges that Defendants also "retained control over the details and methods of aspects of the operation of the Subject ESA Hotel that are directly relevant to the proliferation of sex trafficking at that property" and had the ability "to adopt

3

and enforce policies on [the subject of sex trafficking] for its properties, . . . but failed" to do so. (*Id.* ¶¶ 69, 73.) For example, Defendants purportedly "adopted a policy that required staff at the Subject ESA Hotel to report indicators of potential criminal activity on premises[.]" (*Id.* ¶ 74; *see also id.* ¶ 63 (alleging Subject ESA Hotel had a "policy or protocol that required hotel staff to report suspected criminal activity, including sex trafficking").) According to Plaintiff, "Defendants have failed, at all levels, to take appropriate action in response to their knowledge regarding human trafficking in their hotels[ and] [i]nstead, Defendants have continued financially benefiting from providing a venue for the sexual exploitation of victims like [Plaintiff]." (*Id.* ¶ 44.)

In April 2025, Plaintiff initially filed her complaint. (*See generally* Compl., ECF No. 1.) Plaintiff subsequently filed an amended complaint (ECF No. 17) and then sought leave to file the SAC (ECF No. 24), which this Court granted (ECF No. 31). The SAC alleges two causes of action under the Trafficking Victims Protection Reauthorization Act (the "TVPRA"), 18 U.S.C. § 1581, *et seq.*: (1) perpetrator liability under 18 U.S.C. § 1595(a) based on violation of 18 U.S.C. § 1591(a) ("Count One"); and (2) beneficiary liability under 18 U.S.C. § 1595(a) ("Count Two"). (SAC ¶¶ 6, 91-96.) Defendants now move to dismiss both counts of the SAC.[3] (*See generally* Defs.' Moving Br., ECF No. 34.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure[4] 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

---

[3] The Court also notes that approximately one week after filing their motion to dismiss the SAC, Defendants filed an answer to the SAC "out of an abundance of caution." (Answer 1 n.1, ECF No. 38.)

[4] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**III.    DISCUSSION**

Defendants move to dismiss the SAC in its entirety pursuant to Rule 12(b)(6), arguing that: (1) Plaintiff's conclusory allegations fail to sufficiently allege she is a trafficking victim under the TVPRA; (2) Plaintiff failed to sufficiently allege a claim for beneficiary liability; and (3) Plaintiff failed to sufficiently allege a claim for perpetrator liability. (*See generally* Defs.' Moving Br.) The Court addresses each argument in turn.

A.  **Sex Trafficking Pursuant to the TVPRA**

Defendants argue that Plaintiff's conclusory allegations fail to sufficiently allege that she is a trafficking victim under the TVPRA. (*See* Defs.' Moving Br. 12-14.) The Court disagrees.

The TVPRA imposes both criminal and civil liability for offenses related to human trafficking. *Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 638 (2021); 18 U.S.C. §§ 1591, 1595(a). The TVPRA criminalizes, in relevant part,

> knowingly . . . recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], obtain[ing], advertis[ing], maintain[ing], patroniz[ing], or solicit[ing] . . . ; or . . . benefit[ting] . . . from participation in a venture which has engaged in [those] act[s] . . . knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act[.]

18 U.S.C. § 1591(a). The TVPRA also permits victims of such acts to seek civil remedies against "perpetrator[s]" or anyone who "knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [§ 1591.]" 18 U.S.C. § 1595(a).

"To state a [S]ection 1595(a) claim, a plaintiff must plausibly allege that she was a victim of a criminal offense under [S]ection 1591(a)." *Doe (P.B.) v. Wyndham Hotels & Resorts, Inc.*, No. 23-1493, 2023 WL 8890229, at *4 (D.N.J. Dec. 26, 2023). Here, Plaintiff has alleged that she was "harbored, maintained, provided, and solicited, causing her to engage in commercial sex at the Subject ESA Hotel." (SAC ¶ 25.) She further pleads that she was taken to the Subject ESA Hotel at fourteen, where her trafficker used her age "as a weapon to control and manipulate her, causing her to engage in commercial sex acts for his benefit" between March 23, 2015, and April 6, 2015. (*Id.* ¶¶ 21, 23-25.) This is sufficient to plead that Plaintiff was a victim of sex trafficking. *See, e.g., Doe (M.J.J.) v. Wyndham Hotels & Resorts, Inc.*, No. 24-6490, 2025 WL 342092, at *2

6

(D.N.J. Jan. 30, 2025) (finding plaintiff adequately pled she was a victim of sex trafficking, where she alleged that she "was harbored, transported, or provided for the purpose of causing her, through force, fraud or coercion, to commit a commercial sex act"); *Doe (C.J.) v. Cotugno*, No. 23-2973, 2024 WL 4500994, at *3 n.6 (D.N.J. May 16, 2024) (finding plaintiff "sufficiently establishes she is a victim as defined in the TVPRA" where the plaintiff alleged that she "'was repeatedly trafficked for sex'" and was "'under coercion and control of traffickers who abused and manipulated her'").

## B. Beneficiary Liability under the TVPRA (Count Two)

"To state a TVPRA claim under [a] [S]ection 1595(a) beneficiary theory, a victim under the statute must plausibly allege that the defendant[s] (1) 'knowingly benefit[ted] financially or by receiving anything of value, (2) from participation in a venture, (3) that defendant[s] knew or should have known has engaged in sex trafficking under [S]ection 1591.'" *Cotugno*, 2024 WL 4500994, at *3 (quoting *A.B. v. Marriott, Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020)).

Defendants argue that Plaintiff has failed to state a claim for beneficiary liability under the TVPRA because Plaintiff has failed to sufficiently plead the second and third elements of the claim—namely, "that [Defendants] participated in a venture with her trafficker or that [Defendants] possessed constructive knowledge of her trafficking." (Defs.' Moving Br. 14-15.) The Court addresses each element below.[5]

---

[5] The Court notes that Plaintiff adequately alleges the first element: that Defendants have knowingly benefitted. *See Cotugno*, 2024 WL 4500994, at *3. Specifically, Plaintiff alleges that Defendants knowingly derived revenue from renting hotel rooms to traffickers, including Plaintiff's trafficker. (*See* SAC ¶ 89.) These allegations are sufficient. *See, e.g., Cotugno*, 2024 WL 4500994, at *3 ("The first element is met because [defendant] allegedly 'received a share of the profits from room rentals . . . at the [hotel],' including the rooms where [p]laintiff was trafficked." (second alteration in original)); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 936 (D. Or. 2020) ("[T]he rental of a hotel room—or royalties from that rental—constitutes a financial benefit sufficient to meet this element." (citation omitted)).

7

### *1. Participation in a Venture*

"A 'venture' under § 1595 'is an undertaking or enterprise involving risk and potential profit.'" *Doe (M.J.J.)*, 2025 WL 342092, at *3 (quoting *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724-25 (11th Cir. 2021)). The venture "'need not be specifically a sex trafficking venture,' but rather can be a commercial venture." *Cotugno*, 2024 WL 4500994, at *3 (quoting *G.G. v. Salesforce.com*, 76 F.4th 544, 554 (7th Cir. 2023)). "Defendants' participation also need not be directly in the TVPRA violation; general participation in a commercial venture is sufficient when the 'TVPRA violation is within the scope of the venture.'" *Doe (M.J.J.)*, 2025 WL 342092, at *3 (quoting *Cotugno*, 2024 WL 4500994, at *3). Courts have, therefore, found that "allegations of 'a continuous business relationship between the trafficker and the [hotel defendant] such that it would appear that the trafficker and the hotel[] have established a pattern of conduct or could be said to have a tacit agreement' are sufficient for this element." *Doe (M.J.J.)*, 2025 WL 342092, at *3 (alterations in original) (quoting *Cotugno*, 2024 WL 4500994, at *4).

Defendants argue that the "routine transactions" Plaintiff alleges that Defendants participate in with hotel guests cannot constitute a venture under the TVPRA, and therefore the claim must fail. (*See* Defs.' Moving Br. 15-17.) Viewing Plaintiff's allegations in the light most favorable to Plaintiff as the Court must, *see Phillips*, 515 F.3d at 228, the Court disagrees. Here, Plaintiff alleges that "the heart of Defendants' venture with traffickers (including [Plaintiff's] trafficker) is the reservation of hotel rooms." (SAC ¶ 72.) In participation of this venture, Defendants, ignoring "obvious signs" of sex trafficking, purportedly "retained control over the details and method of aspects of the operation of the Subject ESA Hotel that are directly relevant to the proliferation of sex trafficking at that property." (*Id.* ¶¶ 25, 28-29, 69.) For example, Defendants retained control: (1) "over the response of their hotels to human trafficking, including

8

development of policies and procedures regarding detection of and response to human trafficking" (*id.* ¶ 71); (2) "over the details of reservations at the Subject ESA Hotel, including controlling the online reservation system that was used, providing software systems that were used to check guests in and charge for rooms, controlling the prices of rooms, . . . and setting detailed policies for . . . payment methods and requirements to show identification" (*id.* ¶ 72); (3) "to adopt and enforce policies on th[e] subject [of human trafficking] for [their] properties, . . . but failed to [do so]" (*id.* ¶ 73); (4) "over issues related to reporting security and criminal activity, including human trafficking activity" (*id.* ¶ 74); and (5) over offering free internet service to the sex traffickers (*id.* ¶ 78). Through all of this activity and control over the Subject ESA Hotel, Plaintiff alleges Defendants were direct participants in "reserving rooms to traffickers, including [Plaintiff's] trafficker" and "facilitat[ing] sex trafficking, including the sex trafficking of [Plaintiff] at the Subject ESA Hotel." (*Id.* ¶ 72.)

These allegations sufficiently allege Defendants' participation in a venture—Defendants sought to profit through their reservation of hotel rooms (SAC ¶¶ 72, 89) and operated in such a manner as to facilitate sex trafficking at the Subject ESA Hotel through Defendants' various practices and policies (*see id.* ¶¶ 69-78). *See Doe (M.J.J.)*, 2025 WL 342092, at *3 (finding similar actions "constitute participation in a venture"); *R.Z. v. Red Roof Inns, Inc.*, No. 22-3784, 2024 WL 1332229, at *4-5 (S.D. Ohio Mar. 28, 2024) (finding that "[p]laintiff's allegations that [d]efendants profited, failed to implement policies, and maintained expansive control over the hotel operations standards meet § 1595's definition of 'participation in a venture'"); *J.M. v. Choice Hotels Int'l, Inc.*, No. 22-672, 2023 WL 3456619, at *4 (E.D. Cal. May 15, 2023) (finding plaintiff's allegations that "defendant, in controlling the booking and payment processing, was the entity directly renting rooms to plaintiff's trafficker" was sufficient).

9

### 2. *Actual or Constructive Knowledge*

For the third element of a claim for beneficiary liability under the TVPRA, Plaintiff must allege that "Defendants had actual or constructive knowledge that the ventures engaged in sex trafficking as to [Plaintiff]." *Doe (M.J.J.)*, 2025 WL 342092, at *4 (citing *Doe #1*, 21 F.4th at 725). "Constructive knowledge under the TVPRA is that knowledge which one using reasonable care or diligence should have." *Id.* (internal quotation marks and citations omitted).

Defendants argue that Plaintiff has failed to allege facts to establish Defendants' actual or constructive knowledge as to Plaintiff's sex trafficking. (*See* Defs.' Moving Br. 17-21.) The Court disagrees. Here, Plaintiff alleges that Defendants repeatedly rented hotel rooms to Plaintiff's trafficker while she was trafficked for two weeks at the Subject ESA Hotel, even though there were "numerous obvious signs" of her trafficking that "multiple employees at the Subject ESA Hotel, including management-level employees, observed and/or were made aware of." (SAC ¶¶ 29, 60, 62, 72.) These "obvious signs" included, but were not limited to: (1) Plaintiff's trafficker paying with a credit card in his name, even though he has prior publicly-available sex trafficking charges against him; (2) Plaintiff's trafficker routinely going to the front desk for new towels while keeping the "Do Not Disturb" sign on the hotel room door; (3) heavy foot traffic in and out of Plaintiff's hotel room at unusual hours from men who were not hotel guests; and (4) Plaintiff's trafficker lingering around the hotel or parking lot while Plaintiff was with a "john." (SAC ¶ 60.) This all amounts to, in Plaintiff's view, "obvious signs of trafficking consistent with the modus operandi of her trafficker and which included well[-]known 'red flags' for trafficking in a hotel." (*Id.*)

These allegations are sufficient to plead that Defendants knew or should have known that the ventures were engaged in sex trafficking. *See Doe (M.J.J.)*, 2025 WL 342092, at *4 (finding

10

allegations sufficient at the motion to dismiss stage where plaintiff alleged that the "signs of [plaintiff's] sex trafficking . . . were obvious to hotel staff, and they should have been known to the . . . [d]efendants through mandatory reporting, inspections, their control over room reservations and payments, and other operational oversight"); *Cotugno*, 2024 WL 4500994, at *4 (finding allegations sufficient where the plaintiff alleged various signs of trafficking that hotel staff witnessed that should have made plaintiff's trafficking known); *E.B. v. Howard Johnson by Wyndham Newark Airport*, No. 21-2901, 2023 WL 12053001, at *8-10 (D.N.J. Dec. 29, 2023) (finding allegations of defendants' actions, such as renting rooms paid for with cash to the traffickers, observing a stream of male visitors, and interacting with plaintiff on multiple occasions, sufficient to allege actual or constructive knowledge).

The Court, accordingly, denies Defendants' motion to dismiss Count Two.

C. **Perpetrator Liability under the TVPRA (Count One)**

To state a claim for perpetrator liability under the TVPRA, a plaintiff must plausibly allege that the defendants "knowingly recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited a person knowing or in reckless disregard of the fact that means of force, threats of force, fraud, coercion or any combination thereof will be used to cause the person to engage in a commercial sex act." *Doe (M.J.J.)*, 2025 WL 342092, at *4 (citing 18 U.S.C. § 1591(a)(1)); *J.M.*, 2023 WL 3456619, at *2. "Courts have found that allegations of continued collaboration with traffickers, failure to intervene despite known red flags, and facilitating trafficking conduct can support such a claim." *Doe (K.R.D.) v. Wyndham Hotels & Resorts, Inc.*, No. 24-8174, 2025 WL 1166519, at *3 (D.N.J. Apr. 21, 2025) (citing *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-155, 2020 WL 6318707, at *4-8 (N.D. Cal. Oct. 28, 2020)).

Defendants argue that Plaintiff has not alleged that Defendants have actual knowledge, a required element of a perpetrator liability claim, as "'[m]ere association with sex traffickers is insufficient absent some knowing "participation" in the form of assistance, support, or facilitation.'" (Defs.' Moving Br. 21-23 (quoting *Doe v. Grindr Inc.*, 128 F.4th 1148, 1155 (9th Cir. 2025)).) As noted above, however, Plaintiff alleges that "multiple employees at the Subject ESA Hotel, including management-level employees, observed and/or ***were made aware of***" various "obvious signs" of Plaintiff's trafficking. (SAC ¶¶ 29, 60, 62, 72 (emphasis added).) Plaintiff further alleges various affirmative acts taken by Defendants, including the repeated renting of rooms to traffickers and operating in such a manner as to facilitate trafficking. (*See, e.g., id.* ¶¶ 69-74, 78.) This is more than just a "mere association." *See Grindr*, 128 F.4th at 1155. At this stage, viewing the allegations in the light most favorable to Plaintiff, *see Phillips*, 515 F.3d at 228, the Court finds these allegations sufficient to plead a perpetrator liability claim, *see Doe (K.R.D.)*, 2025 WL 1166519, at *3 (finding plaintiff stated a perpetrator liability claim where she alleged that "[d]espite the[] allegedly clear red flags, [d]efendants . . . failed to investigate, report, or intervene in any way and continued to rent rooms out"); *Doe v. Hotels*, No. 23-1012, 2024 WL 2955728, at *6 (M.D. Fla. June 12, 2024) (defining "to 'harbor' [as] 'to give shelter or refuge to'" and finding that allegations that defendant "entered into a tacit agreement with [p]laintiff's traffickers to provide them with a room and shelter whereby [p]laintiff could be trafficked for profit" were sufficient to state a claim for "harboring" under the TVPRA); *J.M.*, 2023 WL 3456619, at *3 ("[The] plaintiff has [sufficiently] pled the knowledge requirement of perpetrator liability: defendant was aware of the trafficker's 'modus operandi,' including the use of force, and was familiar with the trafficker's conduct." (citation omitted)).

The Court, accordingly, denies Defendants' motion to dismiss Count One.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion to Dismiss is denied. The Court will issue an Order consistent with this Memorandum Opinion.

 

                                                                 /s/ Michael A. Shipp
                                                         **MICHAEL A. SHIPP**
                                                         **UNITED STATES DISTRICT JUDGE**

Dated:       1/23/2026

Case 3:25-cv-02331-MAS-RLS    Document 48    Filed 01/23/26    Page 13 of 13 PageID: 596